IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JONATHAN W. BIRDT, | No. 89299-1-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| THE UNITED STATES PRATICAL SHOOTING ASSOCIATION/IPSC, | |
| Respondent. | |

SMITH, J. — Jonathan W. Birdt was a director at United States Practical Shooting Association/IPSC (USPSA). Birdt initiated a lawsuit against USPSA seeking judicial dissolution for its refusal to give him access to corporate records. The court concluded that Birdt did not have standing, and the court did not have subject-matter jurisdiction or personal jurisdiction, and dismissed the case. Finding no error, we affirm.

FACTS

In January 2025, United States Practical Shooting Association/IPSC (USPSA) elected Jonathan W. Birdt as a director. USPSA is a non-profit corporation incorporated in Delaware and registered in the state of Washington. Upon taking office, Birdt requested access to various corporate records. USPSA denied his requests.

In March 2025, Birdt initiated a complaint against USPSA. In his complaint, Birdt contended that USPSA wrongfully denied his access to

corporate documents, failed to maintain statutorily required meeting records, and made false statements about the existence of these records. Under RCW 24.03A.936, Birdt requested the court appoint a receiver to "wind up" and liquidate USPSA, or, in the alternative, to manage the affairs of the corporation until the court decides whether a decree of dissolution should be issued.

In May 2025, USPSA moved for judgment on the pleadings, contending the court lacked personal and subject matter jurisdiction, the court was an improper venue, and the action should be dismissed under forum non conveniens.[1] USPSA alleged that its only connections with Washington State since 2022 were a single mail drop and a registered agent appointed to receive legal documents.

Birdt cross-moved for summary judgment. Birdt contended USPSA was domiciled in Washington, with its principal place of business in Skagit County, thereby conferring jurisdiction to the court. In its opposition to Birdt's motion, USPSA realleged its original claims and further contended Birdt lacked standing because he was no longer a director.[2] The court denied both motions without

---

[1] At the hearing, the court converted the motion to a motion for summary judgment because Birdt requested judicial notice of publicly available documents including, (1) a 2023 legal filing in Ohio by USPSA declaring Washington is the corporate headquarters of USPSA; (2) a 2025 trademark filing listing Washington as corporate's address; (3) IRS EIN filing showing the non-profit is located in Sedro Woodley, including copies of return from 2020-2021; (4) Washington Charity registration; (5) Cover page from a 2016 Skagit Superior Court Case No. 162 005040 admitting headquarters in Skagit County; (6) Form 990 for 2023 showing business income in Skagit County, and (7) Workers Compensation report defendant claiming 7-10 employees in Skagit County covered by Washington State Workers Compensation Insurance.

[2] After Birdt initiated his complaint, USPSA removed him from his position.

prejudice, concluding genuine questions of material fact existed with respect to USPSA's connection with Washington.

In September 2025, USPSA again moved for judgment on the pleadings, reasserting the issues of standing and subject-matter jurisdiction. Birdt also moved for summary judgment. The court denied both motions without prejudice, and ordered the parties to take part in an evidentiary hearing on the issue of jurisdiction.

After an evidentiary hearing in November 2025, the court issued an order, concluding Birdt had standing to pursue his claims because the court had both subject matter and personal jurisdiction. Specifically, the court found:

> [Birdt] was a director at the time of filing this lawsuit, and he is no longer a director, in part due to his claims connected with this litigation.
>
> . . . .
>
> Between 1987 and 2023 USPSA maintained a physical office in Skagit County, with employees. It has never maintained a physical office outside of Skagit County.
>
> All of the organization's bank accounts, charitable trust funds, and investment accounts are held by financial institutions within the state of Washington.
>
> The organization's legal filings, trademarks, non-profit filings with the IRS, and tax returns all identify Skagit County as its principal place of business.

USPSA moved for reconsideration. The court granted USPSA's motion, simply noting "[USPSA's] Motion for Reconsideration is granted and [Birdt's] Complaint is dismissed with prejudice for lack of standing, subject matter jurisdiction, and personal jurisdiction." Birdt appeals.

ANALYSIS

Standard of Review

We review de novo the dismissal for lack of standing, subject-matter jurisdiction, and personal jurisdiction. *Wash. Bankers Ass'n v. State*, 198 Wn.2d 418, 455, 495 P.3d 808 (2021) (standing); *Dougherty v. Dep't of Lab. & Indus.*, 150 Wn.2d 310, 314, 76 P.3d 1183 (2003) (subject matter jurisdiction); *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 176, 375 P.3d 1035 (2016) (personal jurisdiction).

Standing

Birdt contends the trial court erred because depriving him of standing is contrary to the legislative intent of allowing a director to seek relief under RCW 24.03A.936(2) and would render the Washington Nonprofit Corporation Act[3] (WNCA) worthless. Because Birdt is no longer a director of USPSA, and he has no ongoing fiduciary relationship with USPSA or a legitimate basis to represent USPSA, we conclude the trial court did not err when it dismissed the case based on standing.

RCW 24.03A.936(2) authorizes a director to seek judicial dissolution of a nonprofit corporation. However, not every individual who ever served as a director falls within the statutory definition.

"[A] single word in a statute should not be read in isolation, and . . . 'the meaning of words may be indicated or controlled by those with which they are associated.' " *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005)

---

[3] Chapter 24.03 RCW.

(internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)).  This principle is known as "noscitur a sociis."  *Roggenkamp*, 153 Wn.2d at 623.

Applying the cannon of noscitur a sociis, the word "director" should be interpreted consistently with other persons authorized to initiate judicial dissolution under RCW 24.03A.936(2).  In addition to a director, the statute permits two other categories of individuals to initiate dissolution: "fifty members" or "members holding at least five percent of the voting power."  RCW 24.03A.936(2).  These two categories share a common characteristic: each represent a group with substantial and ongoing relationships with the corporation.  Generally, " 'directors shall be deemed to stand in a fiduciary relation to the corporation.' "  *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 64 Wn.2d 375, 381, 391 P.2d 979 (1964) (quoting RCW 23.01.360).  Directors " 'shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions.' "  *Keypoint Oyster Co.*, 64 Wn.2d at 381. (quoting RCW 23.01.360).  But, once an individual ceases to be a director, they no longer owe a fiduciary duty and do not have a substantial and ongoing relationship with the corporation.  Allowing a former director to have continued standing would grant an individual, whose relationship with the corporation has already ended, access to confidential corporate records and the ability to seek judicial dissolution of the corporation.

The Washington State Supreme Court addressed a similar issue, whether a divested shareholder can maintain standing in a derivative suit, in *Sound Infiniti, Inc. v. Snyder*, 169 Wn.2d 199, 237 P.3d 241 (2010). The Court reinforced the long-standing rule that a " 'shareholder must *remain* a shareholder in order to maintain corporate derivative claims.' " *Sound Infiniti*, 169 Wn.2d at 212 (quoting *Sound Infiniti, Inc. v. Snyder*, 145 Wn. App. 333, 351, 186 P.3d 1107 (2008)). The Court further specified that standing cannot be maintained " 'without a proprietary interest in the corporation' " or " 'if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.' " *Sound Infiniti*, 169 Wn.2d at 212-13 (quoting CR 23.1).

Although *Sound Infiniti* involved a former shareholder rather than a former director, the rationale applies equally in this context. Once an individual ceases to be a director and no longer has fiduciary duties to the corporation, they also no longer have a legitimate basis to represent the interests of the corporation. *See, e.g.*, *King County Dep't of Cmty. & Hum. Servs. v. Nw. Defs. Ass'n*, 118 Wn. App. 117, 126, 75 P.3d 583 (2003) (noting that having resigned more than five years earlier, a former board member no longer had authority to act for the corporation); *McCormick v. Dunn & Black, P.S.*, 140 Wn. App. 873, 896, 167 P.3d 610 (2007) (stating that the appellant was no longer a director, and he was not entitled to participate in managerial corporate affairs). Accordingly, a director cannot maintain standing after they lose a legitimate basis to represent the corporation.

Though Birdt was a director when he filed his complaint, USPSA removed him from that position shortly thereafter. He currently does not have any fiduciary relationship to USPSA or any legitimate basis to represent USPSA. Accordingly, Birdt does not have standing to bring his claims.

Subject-matter Jurisdiction

Birdt contends that the court has subject-matter jurisdiction because WCNA specifically applies to registered foreign nonprofit corporations. Because WCNA expressly specifies that Washington does not have authority to adjudicate internal affairs of registered foreign corporations, and USPSA's dissolution is considered an internal affair, we conclude that the trial court did not err when it dismissed the case based on subject-matter jurisdiction.

"Jurisdiction 'is the power and authority of the court to act.' " *Dougherty*, 150 Wn.2d at 315 (quoting 77 Am. Jur. 2d *Venue* § 1, at 608 (1997)). "Subject matter jurisdiction is a particular type of jurisdiction, and it critically turns on 'the type of controversy.' " *ZDI Gaming Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 617, 268 P.3d (2012) (internal quotation marks omitted) (quoting *Dougherty*, 150 Wn.2d at 316.

The party asserting subject-matter jurisdiction has the burden of proof to establish its existence. *Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp.*, 172 Wn. App. 799, 807, 292 P.3d 147 (2013). This burden is satisfied by demonstrating "the type of controversy" at issue falls within the court's constitutional or statutory authority. *See ZDI Gaming*, 173 Wn.2d at 618.

Under RCW 24.03A.265(1), a registered foreign nonprofit corporation "is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic nonprofit corporation of like character." But, the statute does not imply that Washington courts may adjudicate all types of controversy relating to a foreign nonprofit corporation. Under subsection (2), Washington has no authority "to regulate the organization or internal affairs of a registered foreign nonprofit corporation." RCW 24.03A.265(2).

Such rule, known as the "visitorial powers doctrine," has been consistently recognized and applied by courts for decades. *See, e.g.*, *Meade v. Pac. Gamble Robinson Co.*, 21 Wn.2d 866, 873, 153 P.2d 686 (1944) ("[T]he courts of one state will not exercise jurisdiction in the internal affairs of a foreign corporation."); *Fuller v. Ostruske*, 48 Wn.2d 802, 808, 296 P.2d 996 (1956) ("It is well settled that the courts of one state have no jurisdiction to exercise visitorial powers over foreign corporations or to interfere with the management of their internal affairs . . . even though the foreign corporation may maintain an office and place of business in the state."); *State ex rel. Starkey v. Alaska Airlines, Inc.*, 68 Wn.2d 318, 331, 413 P.2d 352 (1966) (noting that under the visitorial power doctrine, courts of chancery should " 'refuse to interfere in the management of [t]he internal affairs of a foreign corporation' ") (quoting 17 Fletcher, *Cyclopedia*, Corporations § 8426, 425-26 (1960 Rev. Vol.)).

The "visitorial powers" doctrine provides three reasons that a court may refuse to interfere in the internal affairs of a foreign corporation: (1) resolving the dispute requires the court to interpret law of a foreign state; (2) the foreign state

8

is the most appropriate forum to adjudicate, and it alone may possess authority to enforce decrees; and (3) commonly officers, directors and records are solely within reach of the foreign state. *Hern v. Looney*, 90 Wn. App. 519, 529, 959 P.2d 1116 (1998) (citing *Starkey*, 68 Wn.2d at 331).

The difficulty in applying the doctrine is in drawing the line between matters that pertain to the management of the internal affairs of a corporation and those that do not. *Fuller*, 48 Wn.2d at 809. The distinction depends on "the act of the foreign corporation complained of." *Tolbert v. Modern Woodmen of Am.*, 83 Wash. 287, 289–90, 145 P. 183 (1915). When the act of the foreign corporation affects the complainant solely in their capacity as a member of the corporation, then such action is the management of the internal affairs of the corporations. *Tolbert*, 83 Wash. at 289-90. However, when a corporate action only affects the complainant's individual rights, it should not be construed as internal affairs. *Tolbert*, 83 Wash. at 290.

It appears no Washington court has explicitly addressed the issue of whether dissolution of a corporation is considered an internal affair, but federal courts applying Washington law have determined dissolution, or the appointment of receiver to manager a corporation's affair, is considered internal affairs. *Doe v. G6 Hosp. Prop. LLC*, 817 F. Supp. 3d 1074, 1084 (W.D. Wash. 2025) (noting that the internal affairs of a company include the effect of dissolution and termination). Even though Washington has not directly concluded that dissolution is an "internal affair" of corporation, courts have recognized similar matters, such as the appointment of a stock appraiser, claims regarding

9

director's fiduciary duties, and shareholder derivate claims, as "internal affairs" for decades. *See, e.g.*, *Meade*, 21 Wn.2d at 872 (stating that "naming a disinterested appraiser" would require interference in the internal affairs of companies); *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 718, 189 P.3d 168 (2008) (noting that shareholder claims alleging directors breached the fiduciary duty were considered as "involving a corporation's internal affairs"). Because dissolution concerns relationships within the corporation, it is an "internal affair".

Additionally, it is well established that "courts of one state have no jurisdiction to appoint a receiver for a corporation organized under the laws of another state". *Pac. Coast Coal Co. v. Esary*, 85 Wash. 448, 450, 148 P. 579 (1915). Nor do they have jurisdiction to dissolve a foreign corporation. *Pac. Coast*, 85 Wash. at 450. In *Pacific Coast Coal Company*, the Court specified that " 'where the purpose is to wind up a corporation, or a joint-stock association, or a copartnership . . . or where it is desired to obtain a general receivership, . . . initial proceedings should be at the place of domicile.' " 85 Wash. at 450-51 (quoting *Hutchinson v. Am. Palace-Car Co.*, 104 F. 182, 184 (C.C.D. Me. 1900)).

We find that the reasoning of those cases also applies here. USPSA is non-profit corporation incorporated in Delaware. Birdt contends that USPSA denied his access to corporate records and initiated the judicial dissolution proceedings in the court. But whether Birdt, as USPSA's director, should have access to certain corporate records and be able to oversee USPSA's activities is relevant to Birdt only as director. Determination does not affect his individual

rights and benefits.  Therefore, such action should be considered internal affairs of the corporation, which Washington courts have no authority to regulate.

Birdt contends the trial court should have considered alternative relief, such as a conditional judgment, to remedy the malfeasance identified.  But, in his complaint, Birdt expressly requested the Court to either "wind up" or liquidate USPSA or appoint a receiver to manage general affairs of USPSA based on RCW 24.03A.936.  Additionally, any alternative remedies are based on RCW 24.03A.936, and judicial dissolution is the last resort whenever these alternative remedies fail.  Accordingly, we conclude the trial court does not have subject-matter jurisdiction over USPSA's judicial dissolution.

Personal Jurisdiction

Birdt contends USPSA has extensive and systematic contacts with Washington, which are sufficient to establish both specific and general personal jurisdiction.  Because Birdt's judicial dissolution claim was unrelated to any contacts claimed by Birdt, and USPSA did not have systematic and extensive contacts at the time of cause of action accrued, we conclude that the trial court did not err in dismissing the case based on personal jurisdiction.

"When a party challenges personal jurisdiction, the party asserting jurisdiction bears the burden of presenting a prima facie case establishing jurisdiction."  *Shaffer v. McFadden*, 125 Wn. App. 364, 370, 104 P.3d 742 (2005).

There are two approaches to personal jurisdiction: specific and general. *Noll v. Am. Biltrite Inc.*, 188 Wn.2d 402, 412, 395 P.3d 1021 (2017).  For specific jurisdiction, "a state may authorize its courts to exercise personal jurisdiction over

an out-of-state defendant only if the defendant has certain minimum contacts with the state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LG Elecs.*, 186 Wn.2d at 176. Three elements must be met to establish specific personal jurisdiction: "(1) purposeful 'minimum contacts' must exist between the defendant and the forum state, (2) the plaintiff's injuries must 'arise out of or relate to' those minimum contacts, and (3) the exercise of jurisdiction must be reasonable, that is, consistent with notions of 'fair play and substantial justice.' " *LG Elecs*, 186 Wn.2d at 176-77 (internal quotation marks omitted) (quoting *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 758, 757 P.2d 933 (1988)). A party must " 'purposefully avail[] itself of the privilege of conducting activities within the forum State' " to establish the "minimum contacts" element. *LG Elecs.*, 186 Wn.2d at 177 (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

General jurisdiction considers the defendant's contacts with the forum state, regardless of their relationship to the claims at issue. *Noll*, 188 Wn.2d at 412. "General jurisdiction requires extensive and systematic contacts with the forum state." *Noll*, 188 Wn.2d at 412. When determining whether there are extensive and systematic contacts, we consider whether "the corporation's contacts with the state are so substantial that it is essentially at home in the forum state." *Montgomery v. Air Serv Corp., Inc.*, 9 Wn. App. 2d 532, 539, 446 P.3d 659 (2019). A defendant corporation is "at home" in the state of its incorporation and the state of its principal place of business. *Montgomery*, 9 Wn.

App. 2d at 540.  Only in exceptional circumstances, "a corporation's operations in a state may be of such a nature as to make it essentially at home therein even though the state is neither its state of incorporation nor its principal place of business."  *Montgomery*, 9 Wn. App. 2d at 540.

Additionally, the inquiry as to whether the court has general jurisdiction requires a showing that the corporation was "doing business" in Washington at the time of the cause of action accrued.  *Im Ex Trading Co. v. Raad*, 92 Wn. App. 529, 539, 963 P.2d 952 (1998).  If the nonresident corporate defendant was not "doing business" in the state at the time the cause of action accrued, the assertion of general jurisdiction over the defendant would violate due process. *Im Ex Trading Co.*, 92 Wn. App. at 538.

Here, Birdt fails to establish specific personal jurisdiction because no evidence exists to support a finding that Birdt's injury "arose out of" or was "related to" any contacts USPSA had with Washington State.  Birdt contends USPSA has multiple contacts in Washington, including (1) a physical office from 1987 to 2023; (2) has approximately 11 employees; (3) has storage space; (4) financial accounts; (5) registration, and (6) legal filings, trademarks, and tax returns, all identifying Skagit County as its principal place of business.  Those contacts may satisfy the "minimum contact" requirement, but Birdt's complaint concerns the corporation's refusal to provide him with access to corporate records and information, as well as Birdt's subsequent claim for judicial dissolution; these issues are unrelated to any contacts claimed by Birdt.

Therefore, Washington's exercise of jurisdiction based on contacts unrelated to this case would be unreasonable and unfair.

Birdt also fails to establish general personal jurisdiction. When the action for judicial dissolution occurred, no systematic and extensive contacts existed that would render Washington State USPSA's home. At the time the action accrued, in February 2025, the only contacts USPSA had with Washington State were a single mail drop and a registered agent appointed to receive legal documents. No evidence suggests that USPSA maintained its principal place of business in Washington state in February 2025. And, undisputedly, USPSA is not incorporated in Washington, but in Delaware.

USPSA's Washington operations are not so exceptional as to render it essentially at home in the state. USPSA's continued maintenance of an office in Washington prior to 2023 does not demonstrate that USPSA still had such contact in 2025. Similarly, legal filings from 2023 and USPSA's 2021-2023 tax returns are immaterial to determine whether USPSA still has extensive and systematic contacts in 2025.

Moreover, even taking evidence from 2025 into consideration, no systematic and substantial contacts exist. In determining whether a foreign corporation's contacts are substantial, courts consider "the amount, kind, and continuity of activities carried on by the foreign corporation" in Washington. *Hein v. Taco Bell*, Inc., 60 Wn. App. 325, 330, 803 P.2d 329 (1991). The court may also consider "the significance of the economic benefits accruing to the foreign corporation . . . in the state of Washington" and "the amount, kind, and continuity

of activities carried on by the foreign corporation in the state of Washington." *Hein*, 60 Wn. App. at 329.

In *Hein*, we noted that Taco Bell's activities in Washington were continuous and substantial, because Taco Bell had been registered for 24 years, had 16 restaurants in Seattle, hired hundreds of Washington employees to operate its restaurants, purchased supplies and services from other Washington businesses, and benefited from these services. 60 Wn. App. at 331. Conversely, in cases where the court found no general personal jurisdiction existed, the corporations' contacts with the state were minimal. For example, in *MBM Fisheries, Inc. v. Bollinger Machine Shop and Shipyard, Inc.*, the corporation did not have an office or employees in Washington, but it did do business with Washington residents and advertised in national magazines sold in Washington. 60 Wn. App. 414, 417, P.2d 627 (1991).

USPSA's contacts with Washington are somewhere in between *Hein* and *MBM Fisheries* but are more similar to the facts in *MBM Fisheries*. Unlike *Hein*, USPSA no longer has a physical office in Washington, and since 2023, its employees have worked remotely. The fact that some remote employees are currently living in Washington does not automatically render Washington USPSA's home. It's too attenuated to find that anytime a corporation has remote workers in a state, it is domiciled in that state. If we adopted this approach, any state in which USPSA employs remote workers could exercise general jurisdiction. Furthermore, maintaining storage place and financial accounts is

also insufficient to establish that USPSA conduct substantial business in Washington.

Finally, nothing in RCW 24.03A.265 states or implies that when complying with the mandatory registration requirements in Washington, USPSA consents to the general jurisdiction. *See, e.g.*, *Wash. Equip. Mfg. Co., Inc. v. Concrete Placing Co., Inc.*, 85 Wn. App. 240, 245, 931 P.2d 170 (1997) (noting that nothing in the Washington Business Corporation Act[4] "states, or implies, that by complying with [its] mandatory requirements a foreign corporation consents to general jurisdiction in Washington").

Birdt does not have standing, and the court does not have subject-matter jurisdiction or personal jurisdiction. Therefore, the trial court did not err when it granted USPSA's motion for reconsideration.

We affirm.

_____, J.

WE CONCUR:

_____, J.        _____, J.

---

[4] Chapter 23B RCW.